# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD H. GOLDSTEIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TREASURY INSPECTOR GENERAL ) <br> FOR TAX ADMINISTRATION, ) <br> ) <br> Defendant. ) <br> ) | Civil No. 14-cv-02189 (APM) |

## MEMORANDUM OPINION

### I. INTRODUCTION

This case, once more, requires the court to assess Defendant Treasury Inspector General for Tax Administration's ("TIGTA") response to Plaintiff Richard H. Goldstein's Freedom of Information Act ("FOIA") request for records collected and created during a TIGTA investigation of certain Internal Revenue Service employees. Before the court are (1) Plaintiff's Motion for Relief from Judgment Under Rule 60(b), which asks the court to reverse its prior rulings in favor of Defendant in this matter based on the unearthing of purportedly "newly discovered" evidence, and (2) the parties' second round of cross-motions for summary judgment. After reviewing the voluminous briefing in this case, the court finds that (1) Plaintiff's newly discovered evidence does not warrant relief under Rule 60(b); (2) Defendant appropriately relies on FOIA Exemption 3 to withhold some responsive records, but continues to fall short on its invocation of Exemption 7(C); and (3) Defendant has satisfied its obligation to review and release any segregable material within the responsive records. Accordingly, the court denies Plaintiff's Motion for Relief from Judgment

Under Rule 60(b), grants Defendant's Second Motion for Summary Judgment as to its invocation of Exemption 3 and its segregability determination, but denies it as to Exemption 7(C), and denies Plaintiff's Cross-Motion for Summary Judgment. Because this decision and the court's earlier decision, taken together, resolve all issues concerning Plaintiff's FOIA Request in favor of Defendant, the court now enters final judgment for Defendant.

## II. BACKGROUND

Much ink already has been spilled over Plaintiff Richard H. Goldstein's FOIA requests—both in this case and in its companion case, *Goldstein v. IRS*, No. 14-2186 (D.D.C.)—for records relating to his conduct as a whistleblower for the IRS. The court therefore assumes the parties' familiarity with the underlying factual and procedural history of both cases and recites only what is necessary to resolve the narrow issues that remain.

In this case, Plaintiff asked Defendant Treasury Inspector General for Tax Administration ("TIGTA") to produce records collected and created during a TIGTA investigation of certain Internal Revenue Service ("IRS") employees. Specifically, Plaintiff's FOIA request seeks:

> Any and all information or investigative material that may have come to light as a result of a completed TIGTA investigation(s) regarding attorney Timothy Driscoll, and/or Special Agents, Mark Hammond and/or Scott French and their interactions with attorneys David Capes and/or [another of Plaintiff's lawyers] from 2006 through 2010 concerning the reporting of potential tax crimes by various individuals and/or firms.

Am. Compl., ECF No. 12 [hereinafter Am. Compl.], ¶ 38; Am. Compl., Ex. 2, ECF No. 12-2 [hereinafter FOIA Request]. TIGTA located the requested investigative files, but refused to produce them on the grounds that they are exempt from disclosure in full under FOIA Exemptions 6 and 7(C), and in part under FOIA Exemptions 3 and 5. *See* Def.'s Mot. to Dismiss & Mot. for Summ. J., ECF No. 19, Mem. in Supp., ECF No. 19-1 [hereinafter Def.'s First Mot.], at 8–19.

Following the parties' first round of summary judgment briefing, the court found that (1) Plaintiff had conceded the adequacy of Defendant's search for responsive records; (2) Defendant had properly invoked and withheld responsive records under FOIA Exemption 6, as the records in question contained the personal information of IRS employees whose privacy interests outweighed the public's interest in disclosure; and (3) Defendant had not properly invoked FOIA Exemption 7(C) because the agency had failed to demonstrate that the records in question were "compiled for law enforcement purposes." *See Goldstein v. Treasury Inspector Gen. for Tax Admin. (TIGTA I)*, 172 F. Supp. 3d 221, 229–35 (D.D.C. 2016). The court did not reach Defendant's invocation of Exemptions 3 and 5. Ultimately, however, the court declined to grant summary judgment in full in favor of Defendant, because it had not sufficiently shown that it had released all reasonably segregable, non-exempt portions of the responsive records withheld pursuant to Exemption 6. In other words, Defendant had not demonstrated that Exemption 6 justified withholding the responsive documents *in full*. The court thus remanded the matter for a further segregability review.

In the current round of briefing, the parties again dispute whether TIGTA complied with the requirements of FOIA. Defendant moves for summary judgment on the familiar grounds that (1) it properly withheld the investigative files under Exemption 7(C) in full and under Exemptions 3 and 5 in part, and (2) it complied with its obligation to release any reasonably segregable material. *See* Def.'s Second Mot. for Summ. J., ECF No. 39 [hereinafter Def.'s Second Mot.], at 4–12. Plaintiff, for his part, advances a multi-pronged attack. First, Plaintiff moves the court to vacate its partial entry of summary judgment in favor of Defendant under Rule 60(b) of the Federal Rules of Civil Procedure, based primarily on two "newly discovered" pieces of "game changing" evidence that he obtained through FOIA requests not at issue in this litigation. *See* Pl.'s Mot. for

3

Relief from J. Under Rule 60(b), ECF No. 53 [hereinafter Pl.'s Rule 60(b) Mot.], at 2, 10–13; Pl.'s Reply in Supp. of Pl.'s Rule 60(b) Mot., ECF No. 67 [hereinafter Pl.'s Rule 60(b) Reply], at 10–13. Additionally, Plaintiff also moves for summary judgment, challenging the propriety of Defendant's claimed exemptions, as well as its segregability analysis. *See* Pl.'s Opp'n to Def.'s Second Mot., ECF No. 56 [hereinafter Pl.'s Opp'n]; Pl.'s Cross-Mot. for Summ. J., ECF No. 55. Now ripe for consideration, the court turns to the parties' motions.

## III. LEGAL STANDARD

### A. Rule 60(b) of the Federal Rules of Civil Procedure

Plaintiff moves for relief from judgment under Rule 60(b)(2) and Rule 60(b)(6) of the Federal Rules of Civil Procedure. Rule 60(b)(2) provides that a court may relieve a party from a final judgment or order based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b)(2). In order for evidence to meet the requirements of Rule 60(b)(2), the following criteria must be met:

> (1) the evidence must have been in existence at the time of trial; (2) the evidence must be such that it was not and could not by the exercise of due diligence have been discovered in time to present it in the original proceeding; (3) the evidence must not be merely cumulative or impeaching; and (4) the evidence must be admissible and credible, and of such a material and controlling nature as will probably change the outcome.

*In re Korean Air Lines Disaster of September 1, 1983*, 156 F.R.D. 18, 22 (D.D.C. 1994). Thus, to qualify for relief in the present context, Plaintiff must not have been able to discover the evidence prior to the court's entry of partial summary judgment.

Rule 60(b)(6), on the other hand, is a "catch-all provision" that allows a court to grant a party relief from an order for "any other reason that justifies relief." *Lightfoot v. District of*

4

*Columbia*, 555 F. Supp. 2d 61, 70 (D.D.C. 2008); FED. R. CIV. P. 60(b)(6). However, "[t]he Supreme Court has consistently held that Rule 60(b)(6) motions should only be granted in 'extraordinary circumstances.'" *Jarvis v. Parker*, 13 F. Supp. 3d 74, 80 (D.D.C. 2014) (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). The D.C. Circuit has added that Rule 60(b)(6) "should be only sparingly used." *Good Luck Nursing Home v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).

### B. Rule 56 of the Federal Rules of Civil Procedure

Courts are to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To make this determination, the court must "view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party, and a fact is "material" only if it is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A non-material factual dispute must not prevent the court from granting summary judgment. *See id.* at 248–50.

Most FOIA cases are appropriately decided on motions for summary judgment. *See Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). A court may award summary judgment in a FOIA case by relying on the information included in the agency's affidavits or declarations if they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are

5

not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

To prevail on a motion for summary judgment, the agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## IV. DISCUSSION

The court is presented with three related Motions: (1) Plaintiff's Rule 60(b) Motion, (2) Defendant's Second Motion for Summary Judgment, and (3) Plaintiff's Cross-Motion for Summary Judgment. The court turns first to Plaintiff's Rule 60(b) Motion and then to the parties' cross-motions for summary judgment.

### A. Plaintiff's Rule 60(b) Motion

Plaintiff moves under both Rule 60(b)(2) and Rule 60(b)(6) for relief from the court's earlier entry of partial summary judgment in favor of Defendant. Starting with Rule 60(b)(2), Plaintiff argues that he is entitled to relief under that Rule based on two "newly discovered" pieces of evidence. *See* Pl.'s Rule 60(b) Mot. at 1–8, 10–14. The first is the actual disclosure Plaintiff's then-lawyer David Capes made to the IRS Criminal Investigation Division urging the IRS to investigate alleged tax evasion by entities and persons related to Plaintiff's deceased father's estate (the "Capes Disclosure"). Plaintiff received the Capes Disclosure from the IRS in October 2016,

as part of the agency's post-remand productions in the companion case, *Goldstein v. IRS*, No. 14-2186 (D.D.C.). *See* Pl.'s Rule 60(b) Mot. at 2, 10; Def.'s Opp'n to Pl.'s Rule 60(b) Mot., ECF No. 60 [hereinafter Def.'s Rule 60(b) Opp'n], at 5. The second is an e-mail written by Robert Gardner, a former employee of the IRS Whistleblower Office, in which Gardner forwards to TIGTA Plaintiff's concerns about the IRS' handling of Plaintiff's whistleblower disclosure (the "Gardner Complaint"). *See* Pl.'s Rule 60(b) Mot. at 2, 10. The Gardner Complaint apparently spurred an investigation by TIGTA into IRS employees' handling of Plaintiff's whistleblower allegations. *See* Pl.'s Stmt. of Material Facts, ECF No. 57, ¶¶ 27–29. Plaintiff obtained the Gardner Complaint as result of a separate FOIA request that he made during the course of this litigation. *See* Def.'s Rule 60(b) Opp'n at 6; Pl.'s Mot. to Withdraw Notice of Filing, ECF No. 69, Ex. Y, ECF No. 69-32 [hereinafter Tufts Decl., Ex. Y], at 3.

Plaintiff boldly proclaims these two new pieces of evidence to be "game changers" that, if known, would have altered the court's prior decision. Pl.'s Rule 60(b) Reply at 10–13. Plaintiff's materiality argument is difficult to discern,[1] but it appears to be twofold. First, he contends that the new evidence shows that Defendant did not perform a search reasonably designed to identify all responsive material, as required under FOIA, because the agency's search did not unearth either the Capes Disclosure or the Gardner Complaint. *See* Pl.'s Rule 60(b) Mot. at 2. Second, he claims that the Gardner Complaint provides the "meaningful evidentiary showing" of Government wrongdoing necessary to overcome the privacy interests of the IRS employees that TIGTA investigated, such that neither Exemption 6 nor Exemption 7(C) can justify Defendant's withholding of any responsive records. *Id*.

---

[1] Plaintiff spends most of his argument asserting how his newly proffered evidence would assist the court in deciding the current round of summary judgment briefing. *See* Pl.'s Rule 60(b) Reply at 10–14. Whether the evidence Plaintiff now proffers would assist the court in the present dispute, however, is wholly immaterial to whether Plaintiff is entitled to relief from the court's *prior judgment* under Rule 60(b).

7

Defendant, for its part, disputes Plaintiff's contention that the Capes Disclosure and the Gardner Complaint are either "newly discovered" or "material" evidence. First, Defendant argues that neither piece of evidence can be "newly discovered" because Plaintiff plainly *knew* about both before the court's earlier entry of partial summary judgment in this matter—he specifically requested a copy of the Capes Disclosure and has known about the TIGTA investigation for years. *See* Def.'s Rule 60(b) Opp'n at 5–6. Second, Defendant contends that the new evidence is not material because it would not have changed the outcome of *TIGTA I* concerning the adequacy of TIGTA's search or TIGTA's application of Exemption 6. *See id.* at 6–9. While the court disagrees with Defendant's assertion that the evidence is not "newly discovered" for purposes of Rule 60(b), it ultimately agrees that Plaintiff's evidence is not material and, thus, denies Plaintiff's Rule 60(b)(2) Motion.

      *1.      Whether the Capes Disclosure or the Gardner Complaint are "Newly Discovered"*

Defendant is wrong to assert that, simply because Plaintiff knew about both the Capes Disclosure and the Gardner Complaint before the court's entry of partial summary judgment, those two pieces of evidence cannot be "newly discovered" for purposes of Rule 60(b)(2). The D.C. Circuit squarely rejected that argument in *Bain v. MJJ Products*, holding that "mere awareness of evidence during trial, standing alone, [does not] categorically preclude[] later treating the evidence as 'newly discovered' under Rule 60(b)(2)." 751 F.3d 642, 647 (D.C. Cir. 2014). Thus, in the Rule 60(b)(2) context, the Circuit explained, "evidence that was lost, hidden, or unavailable during trial could qualify as 'newly discovered evidence' when later found, even if the evidence was known to the movant at the time of trial." *Id.* The Circuit went on to state, however, that a party's prior knowledge of the evidence can affect a court's assessment of whether the party had exercised reasonable diligence in seeking out the evidence, as required to qualify for relief under the Rule.

8

*Id*. at 647–48.  In the end, the Circuit held that the trial court had properly denied the plaintiff's Rule 60(b)(2) motion because the plaintiff had failed to exercise reasonable diligence in seeking the evidence in question, as evidenced by her failure to notify the trial court about its existence. *See id*. at 649.

Applying *Bain* here, the court finds that Plaintiff's mere knowledge that the Capes Disclosure and the Gardner Complaint existed does not disqualify either from being treated as "newly discovered."  Although Plaintiff at least constructively possessed the Capes Disclosure at some point in time—after all, it was prepared by his lawyer—it is clear from the record that he did not possess a physical copy of the record at the time the court decided *TIGTA I*.  Moreover, Plaintiff also clearly exercised reasonable diligence in pursuing production of the Capes Disclosure, as his challenge to the IRS' withholdings in *Goldstein v. IRS* is what resulted in its disclosure.  As for the Gardner Complaint, *Bain* makes clear that Plaintiff's general awareness of its existence does not, by itself, preclude the Gardner Complaint from being "newly discovered" under Rule 60(b)(2). As far as the court can tell, the only means through which Plaintiff could obtain the Gardner Complaint was through a FOIA request—and that is precisely what he did.  As a result, the court rejects Defendant's argument that the Capes Disclosure and the Gardner Complaint do not qualify as "newly discovered" evidence for purposes of Rule 60(b)(2).

        2.       *Whether the Capes Disclosure or the Gardner Complaint are "Material"*

The court, however, agrees with Defendant that relief under Rule 60(b)(2) is not warranted because neither the Capes Disclosure nor the Gardner Complaint would have changed the court's prior rulings regarding the adequacy of Defendant's search or the applicability of Exemption 6. The court takes each decision in turn.

a. <u>The Adequacy of Defendant's Search</u>

In *TIGTA I*, the court entered judgment in favor of Defendant as to the adequacy of its search because Plaintiff had failed to challenge the search in his opposition brief and, thus, conceded the argument. *See TIGTA I,* 172 F. Supp. 3d at 234–35. Plaintiff now maintains that (1) the court erred in finding that he had not challenged the adequacy of Defendant's search, Pl.'s Rule 60(b) Mot. at 4, and (2) had either the Capes Disclosure or the Gardner Complaint "been produced and before this Court at the time of rendering its decision[,] . . . the adequacy of the searches . . . would have been in question." *Id*. at 2.

Although the court stands by its earlier decision that Plaintiff did not sufficiently challenge the adequacy of Defendant's search, the court does not wish to re-litigate the issue. And so, for the avoidance of doubt, the court will assume that Plaintiff did not forfeit his challenge to Defendant's search and now conducts an independent assessment of the adequacy of the search.

FOIA requires an agency to conduct a search for responsive records that is "reasonably calculated to discover the requested documents." *SafeCard Servs.*, 926 F.2d at 1201. "In general, the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of [the agency's] methods.'" *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). In order to prevail on summary judgment, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). However, if review of the record raises doubt as to whether the agency searched all files that likely contain responsive information, "particularly in view of well defined requests and positive indications of overlooked

materials," then the court must deny summary judgment. *See Aguiar v. DEA*, 865 F.3d 730, 738 (D.C. Cir. 2017) (internal quotation marks omitted).

As evidence of its search efforts, Defendant provided as part of its original summary judgment briefing both a publicly filed declaration and an in camera and ex parte declaration from Darlene Fulton, a TIGTA Information Specialist who routinely processes FOIA requests on behalf of the agency. *See* Def.'s First Mot., Ex. 3, ECF No. 19-3 [hereinafter Fulton Decl.]; In Camera Fulton Decl. In her publicly filed declaration, Fulton states that she determined that all records responsive to Plaintiff's request would be contained in TIGTA's case tracking system, the Performance and Results Information System ("PARIS"). Fulton Decl. ¶ 5. Fulton explains that it was reasonable to limit her search to PARIS because Reports of Investigation ("ROI")—that is, the material responsive to Plaintiff's request—"are not routinely maintained and/or retrieved from any other TIGTA databases." *Id.* Additionally, in her in camera and ex parte declaration, Fulton



Those search terms, in turn, uncovered totaling 457 pages of documents. *Id.*

The court finds Defendant's search was reasonably calculated to identify all responsive records. Fulton's declarations explain that she searched for responsive documents in the database where such documents would most likely be located—the PARIS database—and why other databases would likely not contain such records. *See Aguiar*, 865 F.3d at 739. The declarations also identify the type of search the agency performed and the search terms used to locate the responsive materials. *See DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015). Those

representations are sufficient to establish the adequacy of Defendant's search. *See Aguiar*, 865 F.3d at 738–39.

Having found Defendant's search to be adequate, the court now turns to Plaintiff's assertion that the existence of the Capes Disclosure or the Gardner Complaint has a material effect on that conclusion. First, Plaintiff's receipt of the Capes Disclosure from *the IRS* says nothing about the search conducted by its sister agency, TIGTA. It is true, as Plaintiff contends, that both the IRS and TIGTA operate "under one umbrella agency," i.e., the Department of Treasury, *see* Pl.'s Rule 60(b) Reply at 4, but they are separate sub-agencies with distinct record systems. That the IRS possessed and subsequently produced the Capes Disclosure has no bearing on the adequacy of TIGTA's search. Plaintiff seems to suggest, relying on 5 U.S.C. § 552(a)(6)(B)(iii), that FOIA required TIGTA to consult with the IRS to identify all responsive records. *Id.* at 3–6. That provision of FOIA, however, does not require agencies to consult with one another to adequately respond to requests. The section provides that an agency may extend the time in which it responds to a FOIA request in "unusual circumstances," including when an agency needs to consult with another agency before responding to the request. 5 U.S.C. § 552(a)(6)(B)(iii). Understood correctly, the section permits an agency to extend the time to respond in the event *the agency determines* that another agency maintains a substantial interest in the responsive records, such that interagency consultation is appropriate prior to making any decision concerning whether to produce those records. *Id.* It does not compel such interagency consultation in the first place. Section 552(a)(6)(B)(iii), therefore, is irrelevant. Plaintiff also cites *McGehee v. Central Intelligence Agency*, to suggest that, because the IRS' handling of the Capes Disclosure is what prompted an investigation by TIGTA, TIGTA was required to consult with the IRS as part of its search. Pl.'s Rule 60(b)(2) Reply at 5 (citing 697 F.2d 1095 (D.C. Cir. 1983)). Not so. *McGehee*

merely holds that an agency cannot refuse to disclose responsive records on the ground that the records were obtained from another agency. *See* 697 F.2d at 1010. TIGTA does not refuse to disclose responsive records on that basis in this case. Nor does *McGehee*, as Plaintiff contends, mandate interagency consultation in response to FOIA requests. Thus, Plaintiff's reliance on *McGehee* is misplaced.

Further, the Capes Disclosure and the Gardner Complaint are immaterial for another reason: neither falls within the scope of the records that Plaintiff requested from TIGTA. Plaintiff's demand sought records that had "come to light as a result of the completed TIGTA investigation(s)." The term "come to light" is defined to mean "to become known." *See Come to Light*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/come %20to%20light (last visited September 28, 2017). As both the Capes Disclosure and the Gardner Complaint preceded the TIGTA investigation, neither document could possibly have "become known" as a result of the investigation. *See id.* (citing as example of usage "[o]ther details have *come to light* because of this investigation"). Thus, the plain text of Plaintiff's FOIA request belies his view that the Capes Disclosure and the Gardner Complaint demonstrate the inadequacy of Defendant's search. *Cf. Hodge,* 703 F.3d at 579. In sum, the court finds that Defendant's search was adequate, and rejects Plaintiff's contention that the recently surfaced Capes Disclosure or Gardner Complaint proves otherwise.

      b.    <u>Exemption 6</u>

Plaintiff's second argument—that the Gardner Complaint would have altered the court's ruling as to Exemption 6—fares no better. In *TIGTA I*, the court found that Plaintiff had failed to make the "meaningful evidentiary showing" that "Government impropriety might have occurred" and thus could not establish a strong enough public interest to overcome the privacy interests of

individuals named in TIGTA's investigative files. *See TIGTA I*, 172 F. Supp. 3d at 233 (citing *Nat'l Archives & Records v. Favish*, 541 U.S. 157, 172–74 (2004)). Critically, the court explained that, while "the inconsistencies that Plaintiff discovered raise legitimate questions about the extent of Capes' interactions with the IRS and *seemingly led TIGTA to conduct an investigation. . . .* those facts alone would not cause a reasonable person to have more than a suspicion of impropriety by the government." *Id*. (emphasis added). As the italicized portion of the quoted passage shows, the court previously suspected that TIGTA conducted an investigation into employees who handled the Capes Disclosure, and the Gardner Complaint does no more than confirm that suspicion. Moreover, the Gardner Complaint does not, as Plaintiff contends, provide "meaningful evidence" of Government wrongdoing; to the contrary, it makes clear on its face that Gardner was conveying *Plaintiff's* concerns about the IRS' handling of the Capes Disclosure. *See* Tufts Decl., Ex. Y at 7 (Gardner stating "[Mr.] Tufts wants an opportunity to be debriefed by TIGTA in regards to these allegations and in fact indicated that *if I did not turn this information in he would report me for failing to report potential misconduct*" (emphasis added)). Finally, the Gardner Complaint does not at all crystalize why the public would have an interest in the IRS' treatment of Plaintiff's whistleblower complaint. An isolated instance of misconduct by lower-level IRS employees, as alleged here, gives the public little, if any, understanding of the agency's treatment of whistleblowers. *See Oguaju v. United States*, 288 F.3d 448, 451 (D.C. Cir. 2002), *vacated sub nom. Oguaju v. U.S. Marshals Serv.*, 541 U.S. 970 (2004), *judgment reinstated*, 378 F.3d 1115 (D.C. Cir. 2004); *Beck v. U.S. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993). Thus, the court concludes that the Gardner Complaint would not have altered its conclusion with respect to Exemption 6. The Gardner Complaint does not establish a public interest that outweighs the

privacy interests in protecting individuals' information contained in TIGTA's investigative files. Accordingly, the court finds that Plaintiff is not entitled to relief under Rule 60(b)(2).

       3.    *Rule 60(b)(6)*

Nor is Plaintiff entitled to relief under Rule 60(b)(6). The court need not spend much time on that issue, as Plaintiff comes nowhere close to establishing the kinds of "extraordinary circumstances" warranting relief under that Rule. *See Ackermann*, 340 U.S. at 199. Plaintiff simply advances unsupported allegations that Defendant conspired to delay processing his FOIA requests in order to "defeat[] the informational rights of a whistleblower." Pl.'s Rule 60(b) Mot. at 14. He has offered no reason to suspect, let alone proof of, bad faith on the part of the agency. Accordingly, Plaintiff does not qualify for relief under Rule 60(b)(6).

                                       \*       \*       \*

In sum, the court finds Plaintiff's Rule 60(b) Motion to be without merit. Accordingly, Plaintiff's Motion is denied.

    **B.**    **The Parties' Cross-Motions for Summary Judgment**

The court now turns to Defendant's Second Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. In its Motion, Defendant asks the court to enter judgment in its favor as to (1) its withholding of records in full under Exemption 7(C) and in part under Exemptions 3 and 5, and (2) its segregability determination, i.e., that there are no reasonably segregable, non-exempt records or portions of records it could produce to Plaintiff. Def.'s Second Mot. at 4–12. In support, Defendant offers the following evidence with its current round of briefing: (1) in camera and ex parte declarations from ████████████████████████ ████████████████████████████████████████████████████, (2) an in camera and ex parte declaration from Elina Sissman, a TIGTA attorney who assists with FOIA

suits filed against the agency, and (3) a publicly filed declaration of Timothy Camus, the Deputy Inspector General for Investigations for TIGTA. *See* In Camera ███ Decl.; In Camera ███ Decl.; In Camera Sissman Decl.; Def.'s Second Mot, Ex. 1, ECF No, 39-1 [hereinafter Camus Decl.]. Defendant relies on the declarations of Camus and the ███████ to justify its invocation of Exemption 7(C). Defendant relies on the Sissman Declaration to support its segregability analysis and, correspondingly, its final decision to withhold all responsive documents in full.

In *TIGTA I*, the court found that Defendant properly withheld responsive records under Exemption 6, and because the court now finds Defendant's segregability analysis sufficient, it is not essential to reach the parties' dispute concerning Exemption 7(C). The court nevertheless feels compelled to address the issue, given the energy the parties have put into litigating it, before moving to its discussion of Defendant's segregability determination.

    *1.    Exemption 7(C)*

In its prior decision, the court denied Defendant's request for summary judgment as to Exemption 7(C) because Defendant had failed to establish that the withheld investigative files were "compiled for law enforcement purposes." *TIGTA I*, 172 F. Supp. 3d at 229–230. The court finds that Defendant still has not cured that deficiency.

An essential requirement of Exemption 7(C) is that the information the agency seeks to withhold must have been "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(C). The D.C. Circuit has made clear that "[a]n agency's investigation of its own employees is for law enforcement purposes . . . if it focuses directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions." *Kimberlin v. U.S. Dep't of Justice*, 139 F.3d 944, 947 (D.C. Cir. 1998) (alteration in original)

16

(internal quotation marks omitted). On the other hand, Exemption 7(C) does not exempt from disclosure "[i]nternal agency investigations . . . in which an agency, acting as the employer, simply supervises its own employees." *Id*. (alteration in original) (internal quotation marks omitted).

Defendant's new evidence does not satisfy *Kimberlin*'s definition of records "compiled for law enforcement purposes." Starting with the ███████████ ex parte declarations, the court finds that the declarations demonstrate that TIGTA's investigation here concerned no more than potential violations of internal IRS policies, not illegal conduct. ███████████

███████████

███████████

███████████ ███████████

███████████

███████████

███████████ Neither declarant describes the specific conduct under investigation, nor identifies the possible law violation that, if proven, could have resulted in civil or criminal sanctions. The ex parte declarations thus do not resolve the shortcomings in Defendant's original Motion. The publicly filed Camus declaration does not provide a remedy, either. Camus' declaration contains no evidence specific to the investigative files at issue here, instead providing only general information about TIGTA and its investigative authority. For instance, Camus explains: "Although the primary focus of the Office of Investigations is to investigate potential criminal violations, some allegations that are received by the Office of Investigations do not rise to the level of a criminal violation and could be considered administrative violations of the Standards of Ethical Conduct

for Employees of the Executive Branch and the Supplemental Standards of Ethical Conduct for Treasury Employees." Camus Decl. ¶ 3. In other words, Camus only confirms what the court suspected in its prior opinion: TIGTA's authority includes investigating *both* legal violations and violations of internal workplace policies. *See TIGTA I*, 172 F. Supp. 3d at 230. Moreover, when read in light of the ex parte declarations describing the investigation at issue in this case, Camus' declaration reinforces the court's finding that TIGTA investigated IRS personnel for "administrative violations" that "do not rise to the level of a criminal violation." Camus Decl. ¶ 3. Records compiled for such a purpose do not qualify as "records compiled for law enforcement purposes" under Exemption 7(C).[2]

Accordingly, the court rejects Defendant's reliance on Exemption 7(C) to justify the withholding of any responsive records.[3]

### 2. *Segregability*

The court previously held that Defendant had not shown that the responsive records contained no reasonably segregable, non-exempt information. *See TIGTA I*, 172 F. Supp. 3d at 233–34. The court is now satisfied that Defendant has met its burden and grants summary judgment in its favor.

Because "[t]he focus of FOIA is information, not documents . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead*

---

[2] Defendant also argues that the investigative files in question qualify as law enforcement records for purposes of Exemption 7(C) because the investigation's subject *might* commit a crime, such as making a false statement, during the investigation. Def.'s Second Mot. at 8. However, the mere prospect of illegality cannot transform otherwise non-exempt records into law enforcement records under Exemption 7(C). *See Kimberlin*, 139 F.3d at 947–48.

[3] Defendant also moves for summary judgment based on Exemptions 3 and 5. The court agrees that, to the extent the investigative files contain information that would reveal the identity or existence of an investigation of a taxpayer as to whom Plaintiff cannot perfect a records request, such information qualifies as "return information" that cannot be disclosed under 26 U.S.C. § 6103 and is thus exempt under Exemption 3. *See Goldstein v. IRS*, No. 14-2186 (D.D.C.), Mem. Op. & Order, ECF No. 71, at 21–22. The court does not reach Defendant's assertion of Exemption 5.

*Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). FOIA therefore requires that "[a]ny reasonably segregable portion of [the] record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency must provide a "detailed justification" and not just make "conclusory statements" to support its segregability determination. *Mead Data Cent.*, 566 F.2d at 261. Agencies, however, "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which can be overcome by contrary evidence produced by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

As noted, Defendant relies on the ex parte Sissman Declaration to support its segregability determination. Sissman explains that, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Thus, Sissman makes clear that Defendant carefully considered the contents of each page of the investigative files and provided a "detailed justification" for withholding those files in their entirety. Such an analysis satisfies Defendant's segregability obligations under FOIA. *See Mead Data Cent.*, 566 F.2d at 261.

## V.  CONCLUSION

For the foregoing reasons, the court grants Defendant's Second Motion for Summary Judgment, and denies Plaintiff's Cross-Motion for Summary Judgment.  The court also denies Plaintiff's Motion for Relief from Judgment Under Rule 60(b).

A separate Order accompanies this Memorandum Opinion.

Dated:  September 29, 2017

Amit P. Mehta
United States District Judge